State v. Hicks

STATE OF NORTH CAROLINA v. NORMAN GETTYS HICKS

No. 10

(Filed 11 October 1972)

1. **Criminal Law § 91— motion for continuance — no prejudice in preparing for trial — denial of motion proper**

    · Where defendant was transferred from the unsafe Polk County jail to the N. C. Department of Correction for assignment to a safe prison and it was ordered that he be returned to Polk County two weeks prior to the beginning of superior court session in order for him to confer with his attorney and prepare for trial, defendant showed no prejudice resulting from his being returned twelve days prior to the beginning of court rather than two weeks before; hence, his motion for continuance was properly denied.

2. **Constitutional Law § 30— speedy trial**

    Defendant could not complain of denial of his right to a speedy trial where he was indicted at the first criminal session of superior court after the commission of the offense, and was tried at the first session for criminal cases which convened thereafter.

3. **Burglary and Unlawful Breakings § 5— first degree burglary — sufficiency of evidence to withstand nonsuit**

    State's evidence was sufficient to withstand defendant's motion for nonsuit in a first degree burglary prosecution where it tended to show that defendant called at the home of the burglary victim on two occasions before the commission of the offense, that defendant and another man broke into the victim's home at night and assaulted him, that defendant took all the money which the victim had, and that the victim identified defendant as the perpetrator of the offense.

4. **Criminal Law § 66— in-court identification of defendant — independent observation**

    An in-court identification of defendant made by the victim of the burglary was of independent origin where the victim observed defendant on two occasions before the offense and where the victim observed defendant while under a strong light during the commission of the offense, and such identification was not tainted by the showing of photographs to the victim before trial.

APPEAL by defendant from *Fountain, J.,* August 23, 1971 Session, POLK Superior Court.

In this criminal prosecution the defendant, Norman Gettys Hicks, was charged in the following bill of indictment:

"INDICTMENT — BURGLARY

STATE OF NORTH CAROLINA
County of Polk

The State of North Carolina
　　　　vs.
Norman Gettys Hicks, Defendant

(Filed 1/25/71)
70 CR-930

In the General Court
　　of Justice

Superior Court Division
January Session, 1971

THE JURORS FOR THE STATE UPON THEIR OATH PRESENT, That Norman Gettys Hicks, late of the County of Polk, on the 4th day of October, 1970, about the hour of 9:00 P.M., in the night of the same day, with force and arms, at and in the county aforesaid, the dwelling house of one Landon Clark, Hickory Grove, there situate, and then and there actually occupied by one Landon Clark, feloniously and burglariously did break and enter, with intent, the goods and chattels of the said Landon Clark in the said dwelling house then and there being, then and there feloniously and burglariously to steal, take and carry away U. S. Money, television, radio, furniture, and clothing, against the peace and dignity of the State.

M. L. LOWE　　　　Solicitor"

Following his arraignment and the plea of not guilty, the defendant filed motions: (1) To continue the case for the term; (2) to quash the warrant of arrest and the grand jury indictment; (3) to dismiss the charges for failure of the State to give the defendant a speedy trial.

The evidence on behalf of the State tended to show that on the night of October 4, 1970, two men broke through the glass door in the home of Mr. Landon Clark, assaulted him by beating him with a shotgun, and forced him to open his safe. Failing to find any money in the safe, they took from the victim's wallet five dollars—all he had. One of the robbers had a thin stocking mask over his face. Mr. Clark was able to identify the defendant as the one wearing the mask. He had observed him under a good light during the time he was in the house. The witness testified that on Friday before the robbery the defendant " . . . (C)ame to my house and asked to borrow

a screwdriver. . . . Then, on Saturday afternoon . . . the defendant came to my house and rang the doorbell and said he was selling typewriters, sewing machines and portable televisions."

The witness testified he is an architect and trained to observe details. Although the man had a stocking over his head, his features still showed plainly. The witness especially observed the way the defendant carried his head and moved his hands and arms so that he had no doubt of his identity.

On cross-examination Mr. Clark was asked whether he had seen a photograph or photographs of the defendant in the hands of the officers. He said he had seen two photographs of the defendant among a large display, but that these photographs played no part whatever in his identification of the defendant which was based entirely on observation during the robbery.

The defendant did not testify. However, his mother and father appeared and testified for him. They said the defendant was at their home in South Carolina on October 4. The father testified he was certain of the date, that he signed the defendant's bond to get him out of jail on the evening of October 4 at Spartanburg, South Carolina. In rebuttal, however, the State called Officer Ralph Lamb of the Spartanburg Sheriff's Department who said he knew the defendant, that he was released from jail on bond on October 1.

At the close of the testimony, the court overruled a motion to dismiss.

After the jury returned its verdict finding the defendant guilty of burglary in the first degree coupled with the recommendation the punishment be imprisonment for life, the court imposed the mandatory sentence recommended by the jury. The defendant appealed.

*Robert Morgan, Attorney General, by Thomas B. Wood, Assistant Attorney General, for the State.*

*William H. Miller, for defendant appellant.*

HIGGINS, Justice.

The defendant's many objections to the trial do not find support in the record before us. The offense was committed on the night of October 4, 1970, in Polk County. A warrant charging burglary in the first degree was executed on October 19,

1970. The defendant was arrested in South Carolina, waived extradition, and was returned to Polk County on October 24, 1970. On January 26, 1971 (the first criminal session after the arrest) Judge Hasty, without objection, entered an order finding the defendant could not be tried in Polk County until the August session of superior court; that he had a record of one escape; and that the Polk County jail was unsafe. Based on these findings, Judge Hasty entered an order transferring the defendant to the State Department of Correction for assignment by the director to a safe prison. The order directed his return to Polk County two weeks prior to the beginning of the August session of the superior court, to the end that his attorney could confer with him and make trial preparations.

[1, 2] However, the prisoner was actually returned twelve days before the beginning of the court, rather than the two weeks fixed in the order. Nevertheless, nothing indicates any lack of time to prepare for the trial or other prejudice resulted from the two days' delay. *State v. Flowers,* 244 N.C. 77, 92 S.E. 2d 447. The record does not show error or prejudice in the denial of the motion to continue. Likewise there was no merit in the motion to dismiss for failure of the State to give the defendant a speedy trial. *State v. Johnson,* 275 N.C. 264, 167 S.E. 2d 274. Actually the defendant was indicted at the first criminal session of Polk County Superior Court January 25, 1971, after the commission of the offense. He was tried at the first session for criminal cases which convened thereafter.

[3, 4] The defendant contends that the State's evidence was insufficient to survive the motion to dismiss. The contention cannot be sustained. Mr. Clark saw the defendant first when he asked to borrow a screwdriver on Friday, and again on Saturday when he called at the Clark home posing as a salesman. These calls apparently were to "case" Mr. Clark's home where antiques worth many thousands of dollars were kept. Mr. Clark testified that he recognized the defendant without question although he had a thin women's stocking over his face. "The stocking did blunt the full facial features but the profile was still the same and particularly under a strong light." Mr. Clark further testified that while he was still in the house "I observed his ears and everything physical about him . . . and how he carried his head. He does not carry his head straight, he carries it slightly to the left."

On cross-examination by defense counsel, Mr. Clark testified he had seen some photographs of the defendant in the possession of the police department. However, he made it plain that these photographs played no part in his identification of the defendant. The trial court so found. Mr. Clark testified: " . . . I am an architect and I have been trained to observe details for over 50 years."

The court's finding that the identification was of independent origin and the photographs played no part in the identification of the defendant is supported by competent evidence. The defendant's motion to dismiss was properly denied. *State v. Gray,* 268 N.C. 69, 150 S.E. 2d 1.

The broadside objections to the charge cannot be sustained. In fact we find nothing "off color" in the trial.

No error.